# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO.    20-417 |
| KELVIN JIMENEZ | : | |
| a/k/a "Nip," | | |
| DOMINIQUE PARKER | : | |
| a/k/a "Dom" | | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S
## MOTION *IN LIMINE* TO EXCLUDE EVIDENCE

The United States of America, by its attorneys, Jacqueline C. Romero, United States

Attorney for the Eastern District of Pennsylvania, and Ashley N. Martin, Christopher Diviny,

and Lauren E. Stram, Assistant United States Attorneys for the District, hereby files its Response

to Defendant's Motion *in Limine* to Exclude Rap Music, Videos, and Associated Content (ECF

No. 216, joined by defendant Parker in ECF No. 246 and Jimenez in ECF No. 247).

WHEREFORE, for the reasons stated in the accompanying memorandum of law, which

is incorporated here by reference, the government respectfully requests that the defendant's

motion be denied.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney

/s/ Ashley N. Martin
ASHLEY N. MARTIN
CHRISTOPHER DIVINY
LAUREN E. STRAM
Assistant United States Attorneys

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| **v.** | : **CRIMINAL NO.   20-417** |
| **KELVIN JIMENEZ** | : |
| **a/k/a "Nip,"** | |
| **DOMINIQUE PARKER** | |
| **a/k/a "Dom"** | |

### GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE RAP MUSIC, VIDEOS, AND ASSOCIATED CONTENT

The United States of America, by its undersigned attorneys, Jacqueline C. Romero, United States Attorney for the Eastern District of Pennsylvania, and Ashley N. Martin, Christopher Diviny, and Lauren E. Stram, Assistant United States Attorneys for the district, hereby files this response in opposition to defendant Kelvin Jimenez' and Dominique Parker's Motion *in limine* to exclude rap music, videos, and associated content (ECF Nos. 216, 246, and 247), and states as follows:

## I.    BACKGROUND

The Court is familiar with the facts of this case and its details are well documented in numerous filings to the docket. By way of brief background relevant to this motion, on November 18, 2020, a grand jury sitting in the Eastern District of Pennsylvania returned a seven-count indictment charging Hassan Elliott, Bilal Mitchell, Khalif Sears, and Sherman Easterling with offenses relating to a drug trafficking conspiracy and the killing of Philadelphia Police

Sergeant James O'Connor, and related offenses.[1]   Defendants Bilal Mitchell and Sherman Easterling subsequently pleaded guilty.

On March 22, 2023, a grand jury sitting in the Eastern District of Pennsylvania returned a 31-count superseding indictment charging Hassan Elliott, Khalif Sears, Kelvin Jimenez, and Dominique Parker with violations of 18 U.S.C. §§ 1962(d) (conspiracy to engage in a racketeer influenced corrupt organization) ("RICO"); 1959(a)(1) (violent crimes in aid of racketeering) ("VCAR"); 924(j)(1) (murder in the course of using and carrying a firearm during and in relation to a violent crime or drug trafficking crime); 922(g)(1) (possession of a firearm by a felon), 924(c)(1)(A)(i) (possession of a firearm in furtherance of a drug trafficking crime); 2 (aiding and abetting); and 21 U.S.C. §§ 846 (conspiracy to distribute controlled substances), 841(a)(1), (b)(1)(B) (possession with intent to distribute 5 kilograms or more of cocaine base ("crack") and marijuana), and 856(a)(1) (maintaining a drug involved premises). The racketeering conspiracy charged in the superseding indictment spanned from on or about June 2017 through May 2021. On January 15, 2025, defendants Hassan Elliott and Khalif Sears entered guilty pleas. Defendants Dominique Parker (a/k/a "Dom") and Kelvin Jimenez (a/k/a "Nip") are scheduled for trial on February 24, 2025.

---

[1] Specifically, they were charged with violating 21 U.S.C. §§ 846 (conspiracy to distribute controlled substances), 841(a)(1), (b)(1)(B) (possession with intent to distribute 28 grams or more of cocaine base ("crack") and marijuana), and 856(a)(1) (maintaining a drug involved premises), and 18 U.S.C. §§ 924(c)(1)(A)(i) (possession of a firearm in furtherance of a drug trafficking crime), 924(j)(1) (murder in the course of using, carrying and discharging a firearm), and 2 (aiding and abetting) stemming from their participation in a drug trafficking conspiracy and the killing of Philadelphia Police Sergeant James O'Connor. Defendants Elliott and Easterling were also charged with 18 U.S.C. § 922(g)(1) (possession of a firearm by a felon).

Parker and Jimenez are leaders of a violent drug trafficking organization known by several names, including "Scattergood1700," "SG1700," and "L-block" (hereinafter SG1700) that occupied the Frankford section of Philadelphia from at least June 2017 through May 2021. Parker and Jimenez functioned as the leaders of SG1700 and supplied "crack" cocaine to the younger members to distribute in the Frankford area. Members of SG1700, including Parker and Jimenez, were responsible for many shootings, murders, and other violent acts.

Members of the organization proved their loyalty to the gang by progressively selling larger quantities of controlled substances for the organization, committing violent acts against opposing drug gangs (like the Tackawanna Projects or Hawthorne Street gangs), and refusing to cooperate with law enforcement if arrested (e.g., not "ratting"). Members of SG1700, including Parker and Jimenez, used social media and rap videos to demonstrate their affiliation with SG1700, display access to firearms, celebrate the gang's successes (in the form of admissions to certain crimes), antagonize opposing gangs, and intimidate witnesses and rivals.

Defendant Parker was a rap artist who made numerous videos under the monikers, "Da.Warlord" and "Hoodstar.dom," which were posted to YouTube and his Instagram account. Other members of SG1700, including Hassan Elliott (a/k/a "7Even") and M.S. (a/k/a "LBlock Leek"), also produced rap videos on their own and with Parker. Other members of SG1700, including defendant Jimenez, were featured in the videos and later reposted the videos to their respective social media accounts in support of the rap videos and their content.

## II.    SELECT EXCERPTS FROM "FRANKFORD PURGE" SHOULD BE ADMITTED INTO EVIDENCE

The Superseding Indictment specifically alleges that Parker, Jimenez, and others staged and created multiple music videos in and around the Frankford area, at specific locations relevant to SG1700 or crimes committed by SG1700 members, in which they displayed firearms, money, gang hand signs, and SG1700-branded clothing items, while referencing SG1700 members and associates and acts of violence committed by SG1700 members. *See* ECF No. 105, Superseding Indictment, Overt Act 37. The Superseding Indictment references the following music videos, "Frankford Purge,"[2] "Dear Momma," "Hood Star-No Cap," "The Goat," "Freestyles," "Kooda," and "Catch Up." As discussed herein, the government seeks to introduce specific rap lyrics from "Frankford Purge," along with the music video.[3]

The rap lyrics from "Frankford Purge" that the government will seek to admit, outlined below, are intrinsic to the charged offenses, and therefore, they may be admitted outside of any Rule 404(b) analysis. In *United States v. Green*, the Third Circuit made clear that the "intrinsic" label is reserved "for two narrow categories of evidence." 617 F.3d 233, 248 (3d Cir. 2010). "First [and importantly here], evidence is intrinsic if it 'directly proves' the charged offense." *Id.* (citations omitted). "Second, 'uncharged acts performed contemporaneously with the charged crime may be termed intrinsic if they facilitate the commission of the charged crime.'" *Id.* at 249 (quoting *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000))

---

[2] "Frankford Purge" is available on Youtube at:
https://www.youtube.com/watch?v=qFgZj01XsvU

[3] The government intends to admit only still photographs of the remaining videos, and a portion of "Ready or Not" (without sound), described in more detail below and attached as Exhibit A.

Courts have consistently held that rap lyrics may be appropriately admitted as direct evidence of the crimes charged. *See United States v. Recio*, 884 F.3d 230, 236 (4th Cir. 2018) (finding that district court did not err in admitting rap lyrics where lyrics "consist[ed] of a single sentence that described only the type of conduct of which [the defendant was] accused"); *United States v. Miller*, 638 F. App'x 543, 545 (8th Cir. 2016) (unpublished) (affirming admission of lyrics to show possession of firearm despite defendant's claims that lyrics portrayed him as "another dangerous, violent black man"); *United States v. Pierce*, 785 F.3d 832, 840-41 (2d Cir. 2015) (affirming admission of rap lyrics (and tattoos) as evidence of RICO enterprise despite First Amendment concerns); *United States v. Moore*, 639 F.3d 443, 447-48 (8th Cir. 2011) (affirming admission of rap videos under plain error review even though videos totaled more than 20 minutes in length and were presented to jury without limiting instruction); *United States v. Belfast*, 611 F.3d 783, 820 (11th Cir. 2010) (holding that rap lyrics were relevant and their probative value not substantially outweighed by any unfair prejudice in case where lyrics were used to show that defendant was associated with group that tortured Sierra Leoneans in Liberia); *United States v. Stuckey*, 253 F. App'x 468, 482-43 (6th Cir. 2007) (unpublished) (finding that district court did not abuse its discretion in admitting rap lyrics despite danger of unfair prejudice).

In *Recio*, the Fourth Circuit Court of Appeals explained that a rap lyric posted to the defendant's Facebook page was properly admitted where the lyric was "direct evidence of the crime charged," in addition to showing the defendant's motive for committing the crime. *See id.* at 233-38 (holding that rap lyric "It's Always Tucked, Kuz I'll B Damn If My Life Get Took!!" introduced in felon-in-possession case where defendant had gun in his waistband was not Rule

404(b) evidence).

The music video, "Frankford Purge," was posted to YouTube on February 2, 2020. The government seeks to admit the following excerpts to prove the defendants' knowledge of the enterprise; association with the enterprise; their agreement that they or other gang members would commit racketeering acts; their knowledge of and participation in certain racketeering offenses; the existence of the feuds between warring gangs; and to establish knowledge, motive, and intent.

| Lyrics | Defendant/ Co-conspirator |
|---|---|
| *L Block in this fuckin bitch*<br>*Bumped into that nigga Boy Boy baby mom that bitch ain't want no smoke*<br>*wasn't even claiming you pussy*<br>*Gang bitch* | Dominique Parker |
| *Catch an op, you know we throw em on the timeline (no cap)*<br>*Flat-line, throw that pussy on the timeline (throw him on the fucking line)*<br>*Diggin bodies out the grave, I'm the devil, bitch*<br>*Hey, fuck Homi, fuck Glizzy, I'm the devil, bitch (Fa fa fa)*<br>*Call Pop, that's my motherfuckin bang bro (Bang, bang, bang, bang)*<br>*We spin your block* | Dominique Parker |
| *Got my youngest on some shit (no cap)*<br>*They spin your block*<br>*They spin again*<br>*They try to drive shit (drive shit)*<br>*Gang shit, gang shit*<br>*Walk down, head shots (head shots)*<br>*Perc thirty in his stick* | Dominique Parker |
| *Y'all lil niggas better stop playin, man (SG)*<br>*Like y'all know the fuck the big dogs is (seventeen hundred), man* | Hassan Elliott |
| *Bitch, I'm from seventeen hundred*<br>*You callin' me out like them bodies don't stand for something*<br>*Like I ain't walkdown with that glizzy*<br>*They know we smoked Glizzy in the name of King Lo bitch we steppin (long live King Lo)*<br>*You can get shot in your face I won't go out like Tae*<br>*Every gun in this bitch got me twenty*<br>*You claiming that 48 (huh)* | Hassan Elliott |

| | |
|---|---|
| *Check the score on both blocks, nigga*<br>*Seemy got hit with that Ruger (ruger)* | Hassan Elliott |
| *My niggas killas they get close and get physical*<br>*Roll up, Mugga I know that shit killing them* | Hassan Elliott |
| *Hey me and Walkdown go body for body*<br>*I know them niggas wanna get rid of us*<br>*You catch me in traffic I won't go out like Keeno*<br>*No I turn that thirty to zero*<br>*He try to run then we boxing em* | Hassan Elliott |
| *Fifty-three down to seventeen til the youngest nigga*<br>*Got a body nigga*<br>*Everybody's catchin' bodies, nigga*<br>*Fuck around be next* | M.S. |
| *Ya homie out there sweepin*<br>*He fuck around got swept*<br>*I guess he thought he was a barber*<br>*For cuttin too many fades*<br>*But killers walked down on him*<br>*A bullet rippin through his fade*<br>*You hit my man but he's still walkin*<br>*Hit yours, nigga ain't talkin* | M.S. |
| *The hood knows we was getting money*<br>*We was sellin all the work*<br>*And cops came shut it down*<br>*We turned the bar to a fuckin deli* | M.S. |
| *Y'all already know who the fuck it is, pussy*<br>*LBlock, seventeen hundred, nigga*<br>*Next time you diss a nigga*<br>*Say it with your fuckin chest, pussy*<br>*Stand the fuck up nigga* | Dominique Parker |
| *We run Frankford, you bitch-ass niggas (Fuck outta here)* | M.S. |

***Rule 401 Relevance.*** The excerpts quoted above are relevant to proving the crimes

charged. Evidence is relevant if "it has any tendency to make a fact more or less probable than it

would be without the evidence" so long as that fact "is of consequence" to the case. Fed. R. Evid.

401. The lyrics outlined above highlight the relationship between Parker, co-conspirators, and

cooperating defendants, their association with SG1700, participation in shootings, murders, and

drug dealing, and are relevant to proving the government's racketeering and drug conspiracy

7

charges.

In "Frankford Purge," defendants Parker and Elliott, along with unindicted co-conspirator M.S., rap about SG1700, murders committed by gang members, and drug dealing activity—the same crimes they are charged with committing. The music video features at least 13 SG1700 members, including Parker and Jimenez, and numerous associates. The filming locations, on 5300 Lesher Street and in opposition gang territory *on the site of the murder Parker is charged with committing*, are also relevant to the charges in this case.

Three cooperating witnesses and former members of SG1700 will testify that the lyrics of "Frankford Purge" discuss real events, which is corroborated by details in the lyrics that match physical evidence. All three of these cooperating witnesses were present for the filming of "Frankford Purge," are familiar with the lyrics, and can be seen at different points in the music video. One witness was present when "Frankford Purge" was recorded (in a recording studio) and will testify that both Parker and Jimenez were present. These witnesses will also testify that the gang often fought with opposing gangs on social media and through rap videos and specifically called attention to crimes they committed against opposition groups to "claim" the crimes. Finally, these witnesses will explain that the guns in the music video were real and came from the gang's "trap house," located at 1688 Bridge Street. Indeed, some, if not all, of the firearms featured in the video are charged in the Superseding Indictment. The middle bedroom of 1688 Bridge Street is the location where Sergeant James O'Connor was murdered by Hassan Elliott on March 13, 2020, less than two months after this music video was filmed; police recovered 10 firearms, along with drugs and drug packaging material, in the room.

*Dominique Parker*

Parker taunts and threatens opposing gang members in many of the lyrics outlined above with lines about "Boy Boy's baby mama;" dead members of opposition groups; and threatening to "spin [the] block," kill opposing gang members, and "put them on the timeline." The entire section reads as follows:

> *Bumped into that nigga Boy Boy baby mom that bitch ain't want no smoke wasn't even claiming you pussy/gang shit*
>
> *Catch an op, you know we throw em on the timeline (no cap)*
> *Flat-line, throw that pussy on the timeline (throw him on the fucking line)*
> *Diggin bodies out the grave, I'm the devil, bitch*
> *Hey, fuck Homi, fuck Glizzy, I'm the devil, bitch (Fa fa fa)*
> *Call Pop, that's my motherfuckin bang bro (Bang, bang, bang, bang)*
> *We spin your block*

The government expects that cooperating witnesses will contextualize these lines. First, as to "Boy Boy's baby mom," the government will present testimony: (1) that "Boy Boy" is a member of the opposition group 4800 Tackawanna; (2) that when Parker saw the mother of "Boy Boy's" child ("Boy Boy's baby mom") at 7-11 on Frankford Avenue, she denied involvement with "Boy Boy;" and (3) that Parker sent A.D., a member of SG1700, and "Beba," an associate of SG1700 to beat up "Boy Boy's baby mom," because "Boy Boy" regularly disrespected SG1700 on social media.

The next section, "*Catch an op, you know we throw them on the timeline*," refers to killing members of opposition gangs (known as an "op"). "Timeline" refers to a posting on social media. As charged in the Superseding Indictment and discussed above, the gang regularly posted on social media to brag about murders and shootings committed by the gang. The next lines, "*Digging bodies out the grave, I'm the devil bitch/Hey, fuck Homi, fuck Glizzy, I'm the devil*

*bitch*," refer to the deaths of opposition gang members. "Homi" was a member of 4800 Tackawanna who committed suicide while running from police. "Glizzy" is one of Kaseem Rogers' nicknames. Jimenez is charged in the Superseding Indictment in connection with the Rogers' murder, and it is an overt act in furtherance of the racketeering conspiracy. One cooperating witness describes these lines as Parker saying, "fuck the ops" and "gang warring." These lines are followed with, "*Call Pop, he's my mother fucking bang bro/we spin your block*." This refers to Laquan Hayes (a/k/a "Pop" or "Poppy") who used to live in the area of 4800 Tackawanna but became friends with Parker. A "bang bro" is someone you commit shootings with. Parker is charged with shooting B.L., who shot and killed Hayes. When SG1700 went out looking for opposition gang members to shoot or kill, they referred to it as "spinning the block."

The next section the government intends to introduce, sung by Parker, contains references to Parker's position in the gang, as a leader who has "young boys" under him, and describes how Parker sent the "young boys" out to commit shootings for the gang. The lyrics read as follows:

> *Got my youngest on some shit (no cap)*
> *They spin your block*
> *They spin again*
> *They try to drive shit (drive shit)*
> *Gang shit, gang shit*
> *Walk down, head shots (head shots)*
> *Perc thirty in his stick*

The line, "Got my youngest on some shit (no cap)" refers to murders and shootings committed by Hassan Elliott, Bilal Mitchell, Khalif Sears, and C.A., who were all of Parker's "young boys." Multiple cooperating witnesses will testify that all four of these men committed numerous shootings and at least one murder (or more) each prior to the filming of this music video (charged in the Superseding Indictment as Overt Acts 8, 9, 13, 15, 18, 21, 22, 34, 35, and 41).

10

"No cap" means "no lie." The lines about spinning the block refer to Parker sending "young boys" out to commit shootings, both because he did in fact do that and as a threat to opposition groups in the future. Finally, Parker says, "*Gang shit, gang shit/walk down, head shots/perc thirty in his stick*." Multiple cooperating witnesses will testify that they were a gang, that the reference to "walk down, head shots," refers to murders committed by the group at close range—including the murders of Kaseem Rogers and Dontae Walker—and that "perc thirty in his stick" refers to a gun with an extended magazine. Former gang members who committed these murders, along with Parker for the Walker murder, will testify that guns with extended magazines were used in the crime, which is also supported by ballistics evidence.

*Hassan Elliott*

Hassan Elliott sings the second verse of "Frankford Purge." He opens the verse speaking, with the lines, "*Y'all lil niggas better stop playin, man (SG)/Like y'all know the fuck the big dogs is (seventeen hundred), man*," which evidences association between SG1700 gang members. The section is as follows:

> *Bitch, I'm from seventeen hundred*
> *You callin me out like them bodies don't stand for something*
> *Like I ain't walkdown with that glizzy[4]*
> *They know we smoked Glizzy in the name of King Lo bitch we steppin (long live King Lo)*
> *You can get shot in your face I won't go out like Tay*
> *Every gun in this bitch got me twenty*
> *You claiming that 48 (huh)*

In this section, Elliott brags about the murders of Kaseem Rogers[5] ("*They know we smoked*

---

[4] The word "glizzy" refers to either a gun or Kaseem Rogers nickname, "Glizzy," depending on the context.

[5] In the video, Elliott is wearing a sweatshirt with a picture of Kaseem Rogers on the front. The hood of the sweatshirt reads, "FUCK THE OPPS." At trial, we will introduce photographs of

*Glizzy* [Kaseem Rogers' nickname] *in the name of King Lo* [murdered SG1700 member Daniel Martinez, a/k/a "Bolo"], *bitch we steppin*."). Elliott then goes on to say, "*You can get shot in your face I won't go out like Tae*," which is a reference to the murder of Dontae Walker, who was shot multiple times in the face and head at close range. This is followed by a direct reference to the 4800 Tackawanna gang, when he says, "*You claiming that 48 (huh)*."

The government intends to introduce select sections of the next portion of Elliott's verse. These sections reference the murders of Kaseem Rogers and Dontae Walker in detail. First, "*Check the score on both blocks, nigga/Seemy got hit with that Ruger (ruger)*," refers to the gang war between SG1700 and 4800 Tackawanna and the "score," meaning how many people have been killed on each side. "Seemy" was another nickname for Kaseem Rogers. Ballistics evidence from the scene of the Rogers murder confirms that a Ruger firearm was used. Next, Elliott says, "*My niggas killas they get close and get physical/Roll up, Mugga I know that shit killing them*." "Mugga" was Dontae Walker's nickname. The Walker murder was also committed at close range. Evidence and witness testimony will establish that Elliott, Mitchell, Parker, and another SG1700 member, M.B., committed this murder. The men split into two groups and approached Walker from two different angles, effectively boxing him in before unleashing a shower of bullets. These details are mentioned in the next section, which reads as follows:

> *Hey me and Walkdown go body for body*
> *I know them niggas wanna get rid of us*
> *You catch me in traffic I won't go out like Keeno*
> *I turn that thirty to zero and we got them sticks like we play for a hockey team*
> *He try to run then we boxing em*

"Walkdown" is the nickname given to Bilal Mitchell by SG1700 members after the murder of

---

Dominique Parker and Bilal Mitchell wearing the same sweatshirt at different times.

Rogers. As discussed earlier, "Keeno" was a 4800 Tackawanna member who committed suicide while running from police. The lines, "*I turn that thirty to zero/we got them sticks like we play for a hockey team/he try to run then we boxing em*," are direct references to the Walker murder, specifically how they used guns with extended magazines, known as "sticks," and how Walker tried to run away but they boxed him in. Testimony from multiple witnesses corroborates the fact that Walker tried to run from the men before he was killed.

The next verse is sung by unindicted co-conspirator M.S.[6] The government has identified select sections of this verse that reference association evidence, a detailed recounting of the Walker murder, and the drug dealing activity of the gang. The first section is association evidence and a threat to opposing gang members. It reads, "*Fifty-three down to seventeen til the youngest nigga/got a body nigga/everybody's catchin' bodies, nigga/fuck around be next.*" The line also references how each of the "young boys"—Hassan Elliott, Bilal Mitchell, Khalif Sears, and C.A.—committed one or more homicides in the name of SG1700 prior to the filming of the video. Indeed, Hassan Elliott is wearing a mask in the video (pre-COVID), because he was wanted for the murder of Tyrone Tyree at the time of filming.

The next section is a detailed recounting of the murder of Dontae Walker. M.S. raps,

> *Ya homie out there sweepin'*
> *He fuck around got swept*
> *I guess he thought he was a barber*
> *For cuttin' too many fades*
> *But killers walked down on him*
> *A bullet rippin' through his fade*
> *You hit my man but he's still walkin'*
> *Hit yours, nigga ain't talkin'*

---

[6] The admissibility of the statements of a co-conspirator is addressed in the next section.

Walker was a neighborhood barber. He was sweeping up hair next to his barber chair when he was shot and killed. Kelvin Jimenez is featured in this portion of the music video, along with defendant Elliott, Bilal Mitchell, and M.S. This portion of the video is filmed in opposition gang territory at the exact location where Walker was murdered. Jimenez has a broom in his hand and is sweeping the sidewalk, mimicking the circumstances of the murder. A cooperating witness present at the time of filming will testify that it was Jimenez's idea to reenact the murder when he found the broom in the area.

The last lines of this section refer to the motive for the killing. On August 17, 2019, M.S. was shot by unknown individuals. Jimenez drove M.S. to the hospital; both men refused to cooperate with law enforcement ("*You hit my man but he's still walkin'*"). The gang quickly retaliated against both 4800 Tackawanna (the shooting of R.B. on August 20, 2019) and Hawthorne Street (the murder of Dontae Walker on August 22, 2019) ("*Hit yours, nigga ain't talkin'*").

The final lines of M.S.'s verse that the government seeks to introduce reference SG1700's drug dealing. In this section, M.S. says, "*The hood knows we was getting money/we was sellin' all the work/and cops came shut it down/we turned the bar into a fuckin deli*." Cooperating witnesses will explain that "*we was sellin' all the work*" refers to drug sales ("work" means drugs) by SG1700 and that M.S. is rapping about how there used to be a bar, "PT's Pub," in SG1700's territory where the group sold drugs and hung out. The bar was shut down after police activity in the area and turned into "Bridge Deli." The deli is on the same block as 1688 Bridge Street, the "trap house," and essentially across the street from the 5300 block of Lesher Street.

The final verse is sung by Dominique Parker and addresses opposition gang members directly. He says,

> *Y'all already know who the fuck it is, pussy*
> *LBlock, seventeen hundred, nigga*
> *Next time you diss a nigga*
> *Say it with your fuckin chest, pussy*
> *Stand the fuck up nigga*

This is a direct challenge to members of opposing gangs—which is one of the gang's main purposes in releasing these raps and a way that they maintained control of their drug territory—and contains association evidence. The last line of the song, said by M.S. is, "*We run Frankford, you bitch-ass niggas (Fuck outta here)/don't fuck around with you niggas*." These lyrics are said at the end of the music video, as the group is walking into opposition gang territory, specifically toward the corner where Walker was killed.

### Rule 404(b).

The thrust of the defendants' argument against the admission of the rap lyrics and video at issue is that the evidence is not relevant, thus the defendants do not even address Rule 404(b). Nor should they have given that the evidence is, as set forth above, direct proof of the charged crimes. But even if the Court determines that the government's proffered rap evidence is subject to Rule 404(b)—it is not—the conclusion remains the same.

### Rule 404(b) and Guiding Principles

Federal Rule of Evidence 404(b) states:

(b) Crimes, Wrongs, or Other Acts.

(1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) Permitted Uses; Notice in a Criminal Case. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On request by a defendant in a criminal case[7], the prosecutor must:

> (A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and

> (B) do so before trial -- or during trial if the court, for good cause, excuses lack of pretrial notice

Rule 404(b) applies to evidence of wrongful acts that are "extrinsic" to the charged offense. Rule 404(b) provides that while evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show conformity therewith, such evidence may be used for other purposes; indeed, such evidence shall be admitted if relevant for any other purpose than to show a mere propensity or disposition on the part of the defendant to commit the crime. *See United States v. Long*, 574 F.2d 761, 765 (3d Cir.1978), *cert. denied*, 439 U.S. 985 (1978). "In *Huddleston v. United States*, 485 U.S. 681 (1988), the Supreme Court set out a four part test for admission of Rule 404(b) evidence: (1) the evidence must have a proper purpose; (2) it must be relevant; (3) its probative value must outweigh its potential for unfair prejudice; and (4) the court must charge the jury to consider the evidence only for the limited purposes for which it is admitted." *United States v. Givan*, 320 F.3d 452, 460 (3d Cir. 2003). Further, Rule 404(b) makes no distinction between acts prior to and subsequent to the charged conduct. *See United States v. Bergrin*, 682 F.3d 261, 281 n.25 (3d Cir. 2012).

Here, the government is offering the rap evidence for several proper non-propensity

---

[7] As of the date of this filing, the defendant has not requested that the government provide notice of any evidence arguably within the scope of Rule 404(b). Nonetheless, in an abundance of caution, the government herein affirmatively informs the Court of its intention to use evidence which may fall within the scope of Rule 404(b).

purposes, some of which are also direct evidence of the charged crimes, specifically: (1) to prove the defendants' knowledge of the enterprise; (2) association with the enterprise; (3) their agreement that they or other gang members would commit racketeering acts; (4) their knowledge of and participation in certain racketeering offenses, specifically the murders of Kaseem Rogers, Dontae Walker, and drug dealing in SG1700 territory; (5) corroboration of statements made by cooperating witnesses that are not otherwise corroborated by other evidence; (6) the existence of the feuds between warring gangs; (7) as an example of how SG1700 used rap videos and lyrics to threaten and intimidate opposing gangs; (8) to establish the motive for the Walker murder; (9) access to firearms that were found in 1688 Bridge Street just a few months after the video was filmed; and (10) the motive to participate in the gang feud. Fed. R. Evid. 404(b)(2); *see also Steiner*, 847 F.3d at 112 (demonstrating "an ongoing relationship between co-conspirators" in conspiracy case is proper non-propensity purpose); *Stuckey,* 253 F. App'x at 482-83 (explaining how rap lyrics can be probative of knowledge, preparation, and plan, and admitting a defendant's statements through rap lyrics "just as if he had made the same statements to a third party"); *United States v. Moore,* 639 F.3d 443, 447-48 (4th Cir. 2011) (explaining rap music can be relevant to prove a defendant's knowledge and motive). The proffered evidence, moreover, does not invite the jury to improperly infer that the defendants "ha[ve] a propensity to commit [the] crime[s]" charged. *Foster*, 891 F.3d at 108. The rap evidence invites the jury to logically conclude that Parker and Jimenez were members of SG1700, had a close relationship with other SG1700 members, enjoyed a position of power in the gang (specifically as to Parker's lyrics), knew about and celebrated the racketeering crimes committed by SG1700 members, and benefitted from the power and control that SG1700 gained by producing and releasing rap videos

17

with direct and indirect threats to opposing gangs.

  ***Rule 403 Balancing.*** As discussed above, the limited universe of excerpted lyrics and videos the government seeks to admit are highly probative of the crimes charged. They provide direct and circumstantial evidence of the associations between defendants (and among other coconspirators), of the underlying feud with the 4800 Tackawanna and Hawthorne Street gangs, SG1700's drug dealing activity, and murders committed by SG1700, in the name of SG1700. Regardless of whether they are admitted as direct evidence of the charged offenses or other acts, this type of evidence is appropriate under Federal Rule of Evidence 403.

  Federal Rule of Evidence 403 permits a district court to exclude relevant evidence only if the evidence's probative value is *substantially* outweighed by the danger of *unfair* prejudice. Fed. R. Evid. 403 (emphasis added). "Unfair prejudice" refers to an undue tendency to suggest a decision on an improper basis. *See* Rule 403, Advisory Committee Notes. Rule 403 does not entail a simple "balancing." Rather, the rule makes clear that exclusion is allowed only if the prejudicial impact "substantially outweighs" the probative value. In part, this means that the test is almost surely not met where the probative value of the evidence is itself high.

  In speaking of "prejudice," the rule is not asking simply whether the evidence is harmful to the defendant's case:

> [Rule 403] does not offer protection against evidence that is merely prejudicial, in the sense of being detrimental to a party's case. Rather, the rule only protects against evidence that is unfairly prejudicial. Evidence is unfairly prejudicial only if it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."

Advisory Committee's Note, Fed. R. Evid. 403; *Carter v. Hewitt*, 617 F.2d 961, 972 (3d Cir. 1980). "[T]he prejudice against which [Rule 403] guards is unfair prejudice – that is, prejudice of

the sort which clouds impartial scrutiny and reasoned evaluation of the facts, which inhibits neutral application of principles of law to the facts as found." *United States v. Starnes*, 583 F.3d 196, 215 (3d Cir. 2009) (quoting *Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 670 (3d Cir. 2002) (emphasis in original)). "Virtually all evidence is prejudicial or it isn't material." *Carter*, 617 F.2d at 972 n.14 (quoting *Dollar v. Long Manufacturing Co.*, 561 F.2d 613, 618 (5th Cir. 1977)); *United States v. Cross*, 308 F.3d 308, 323 (3d Cir. 2002) ("[W]hen evidence is highly probative, even a large risk of unfair prejudice may be tolerable.").

The remedy of exclusion under Rule 403 is "extraordinary" and should be applied sparingly; the balance should be struck in favor of admissibility. *United States v. Terzado-Madruga*, 897 F.2d 1099, 1117 (11th Cir. 1990); accord, *United States v. Dennis*, 625 F.2d 782, 797 (8th Cir. 1980); *United States v. Day*, 591 F.2d 861, 878 (D.C. Cir. 1978). As noted above, "Rule 403 does not provide a shield for defendants who engage in outrageous acts, permitting only the crimes of Caspar Milquetoasts to be described fully to a jury. It does not generally require the government to sanitize its case, to deflate its witnesses' testimony, or to tell its story in a monotone." *Cross*, 308 F.3d at 325 (quoting *United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C. Cir. 1998)).

Further, any prejudice may be ameliorated through a jury instruction which, as the Third Circuit has stated, minimizes any potential for unfair prejudice and ensures that the jury does not consider the evidence for an improper purpose.[8] *See, e.g.*, *United States v. Lee*, 612 F.3d 170,

---

[8] To the extent the defendants suggest that crafting a proper limiting instruction "would require the court to issue a confusing web of limiting instructions and a jury to compartmentalize," (ECF No. 216, p. 6), it is an insult to the intelligence of the citizens who serve as jurors and the Court's ability to craft a proper instruction.

191 (3d Cir. 2010); *United States v. Sriyuth*, 98 F.3d 739, 748 (3d Cir. 1996). Finally, it may be observed that the Third Circuit has allowed the admission under Rule 404(b) even of information which in all likelihood was far more prejudicial, relative to the charged conduct, than that involved in the current case at issue.   For example, in *Green*, the defendant was charged with attempted possession of a kilogram of cocaine with intent to distribute. The Court held that the district court did not abuse its discretion in admitting evidence regarding the defendant's efforts to acquire dynamite in order to kill an undercover officer involved in an earlier case, because the evidence helped explain the conversations between the defendant and a cooperator, and to explain the cooperator's motives in assisting law enforcement. The Court added: "We note that we have rejected Rule 403 challenges to the admission of evidence that was just as prejudicial as the evidence at issue here."   *See, e.g.*, *United States v. Scarfo*, 850 F.2d 1015, 1020 (3d Cir. 1988) (evidence of uncharged murders); *United States v. Sriyuth*, 98 F.3d 739, 748 (3d Cir.1996) (evidence of uncharged rape). *See also United States v. Daraio*, 445 F.3d 253, 264-66 (3d Cir. 2006) (holding that evidence of defendant's uncharged tax evasion was relevant and admissible to show defendant's intent in failing to pay over payroll taxes).

Probative rap songs frequently survive the Rule 403 analysis despite the prejudice to a defendant of introducing such lyrics. *See, e.g.*, *Pierce*, 785 F.3d at 841 (affirming admission of rap lyrics over Rule 403 challenge); *Stuckey,* 253 F. App'x at 482-83 (rap lyrics about committing murder not unfairly prejudicial); *Belfast*, 611 F.3d at 820 (rap lyrics probative on "multiple fronts" not outweighed by any unfair prejudice). That is especially so when the lyrics introduced are carefully crafted to avoid references to "irrelevant behavior, like threatening the police or degrading women[.]" *Recio*, 884 F.3d at 236. That is what the government has done

here. The government is not seeking to introduce the vast majority of the rap songs and videos produced by members of SG1700, as they often degrade women or make generic references to violence or drug dealing without details like those included in "Frankford Purge."

Indeed, the government was equally selective in consideration of lyrics from "Frankford Purge." We did not include, for example, reference to putting "*fifty hollows up in Queenie's belly/momma come prayin' for ya life/she talkin bout please don't kill my baby*," which is also about a real event where an opposition gang member's mother pleaded with SG1700 members for the life of her son. This was a shooting committed by SG1700 members but neither Parker nor Jimenez were directly involved. Instead, the government seeks only to introduce the segments of "Frankford Purge" and videos identified for the relevant purposes discussed above.

The risk of prejudice to Parker and Jimenez is also lessened because the crimes for which they are on trial are no more serious than anything referenced on the rap songs, and in fact, they are one in the same. The most serious topic included in the lyrics outlined above is the murder of Kaseem Rogers and Dontae Walker. Jimenez is charged with Rogers' murder. Parker is charged with Walker's murder. As one court has observed in admitting rap songs and videos, although such "videos and lyrics undoubtedly contain profanity . . . and other references that many individuals might find objectionable[,] . . . the content is not 'more inflammatory' than the crimes charged[.]" *Carpenter*, 372 F. Supp. 3d a 78.

The defendants' reliance on *United States v. Gamory*, 635 F.3d 480, 493 (11th Cir. 2011), in support of his argument that these lyrics and videos should be excluded under Rule 403 is misplaced. (*See* ECF No. 216, Memorandum of Law, p. 4). *Gamory* was a drug conspiracy case in which the government sought to introduce a rap video *where the defendant did not appear and*

*had not written the lyrics*. The only connection between the defendant and the video was the involvement of his production company. The video contained "explicit lyrics dealing with drugs, sex, profanity, degradation of women, firearms, and threats of violence against the police and public." *Id*. at 488. The video was admitted over Gamory's objection and without a limiting instruction. The Eleventh Circuit Court of Appeals agreed with Gamory that the introduction of the rap video was more prejudicial than probative but ultimately concluded that the error related to the admission of the video was harmless and affirmed the conviction.

The defendants' reliance on *United States v. Bey* is equally misplaced. (*See* ECF No. 216, Memorandum of Law, p. 5). *Bey* was a felon-in-possession case in which the government sought to introduce a defendant's rap lyrics to establish that defendant's knowledge and lack of mistake in possessing the purported firearm. 2017 WL 1547006, at *3-*4. In excluding the rap lyrics, the district court in *Bey* found that "knowledge and absence of mistake" were not at issue in the case given the government's theory of the crime and thus not sufficiently relevant to be introduced into evidence. *Id.* at *4. The court held, in the alternative, that the lyrics were unduly prejudicial given their scant probative value to the government's case and their potential to prejudice the jury given that the lyrics at issue "contain[ed] potentially inflammatory material that [was] entirely irrelevant to th[e] case[.]" *Id.* at *7. Here, in contrast to *Bey* and the other cases cited by the defendants, the government's proffered universe of rap evidence is narrowed to avoid unduly inflammatory lyrics and is limited only to those lyrics that have a direct link to the crimes charged and that tend to make disputed facts more probable. *United States v. Sims*, 11 F.4th 315, 323 (5th Cir. 2021) (summarizing an emerging consensus that rap evidence survives Rule 403 "when the defendant performs the song, describes events closely related to the crime charged,

22

and the evidence is not cumulative").[9]

The defendants' incorrectly assert that they will be substantially and unfairly prejudiced by the introduction of the identified evidence because it is cumulative. The defendants argue, "If the Government intends to introduce the possession of firearms and currency as proof of access, it is cumulative to other, significantly more relevant evidence that will be presented by the Government to show that the Defendant[s] had access to guns and money." (*See* ECF No. 216, Memorandum of Law, p. 4). The evidence identified above is not cumulative and certainly relates to far more than access to money and weapons. Most of the lyrics identified go directly to details of murders, the modus operandi of SG1700, and Parker's position as a leader of the gang. They are also not cumulative of other evidence in this case, the majority of which comes in the form of testimony from cooperating witnesses. These are words said and actions taken directly by both remaining defendants in this case, for which there is no substitute. *See United States v. York*, 165 F. Supp. 3d 267, 270 (E.D. Pa. Oct. 20, 2015) ("Damaging evidence is not necessarily excludable evidence. A Defendant cannot contest facts that are intrinsic to a crime, and then object when the Government seeks to prove them in a compelling way[.]").

To the extent the defendants challenge the admission of these videos on First Amendment grounds, courts have specifically rejected this argument where the lyrics constitute direct

---

[9] The defendants additionally cite to *United States v. Williams*, 663 F.Supp. 1085, 1137-38 (D. Ariz. 2023), an Arizona Magistrate Court's opinion adopted by an Arizona District Court, though defendants provide no additional discussion. In *Williams*, the government sought to introduce "highly inflammatory" rap lyrics produced by an unknown author (not all of which could be deciphered), prior to the events charged in the indictment, without "an unmistakable connection to the facts of the charged offenses." *Id*. at 1096. But, unlike *Williams*, the proffered lyrics in this case are sung by identified individuals, after relevant events, and have distinct connections to the facts of the charged offenses.

evidence of the charged crimes. In *Pierce*, the defendant argued that admission of a rap video violated his First Amendment rights and also "that the rap lyrics were merely 'fictional artistic expressions' and 'perverse puffery' that should not have been admitted against him." 785 F.3d at 841. The Second Circuit disagreed, noting that the rap lyrics were properly admitted to show the defendant's relationship to RICO co-defendants and animosity toward others as his motive for violence. The *Pierce* Court therefore found that the probative value of the lyrics was not outweighed by the danger of unfair prejudice and did not implicate the defendant's First Amendment rights. *Id*.

Defendants additionally contend that the admission of these rap lyrics would require a collateral inquiry into the veracity of each lyric and create a "trial within a trial." Because the lyrics themselves relate to the crimes charged in the superseding indictment there is nothing "collateral" about the inquiry. Instead, the inquiry relates to the central issues in the case.

Here, the defendants' rap lyrics are direct evidence of the crimes charged, including but not limited to the racketeering conspiracy, the drug conspiracy, and VCAR murders and assaults. At trial, the government will present multiple former members of SG1700 who will testify that the rap lyrics discuss real events; the government will additionally present corroborating evidence to show that the raps include details of the charged crimes like the firearms used or the manner in which a murder was committed. As part of the racketeering conspiracy charged in this case, the defendants are accused of using threats and violence to facilitate their drug trafficking and promote their enterprise. One of the ways the group communicated these threats of violence was through music videos where they displayed guns, money, drugs, gang hand signs, SG1700-branded clothing items, and rapped about their participation in, and approval of, various

24

racketeering activities, which is specifically pled in the indictment. *See* ECF No. 105, Overt Act 37.

### III.   THE MUSIC VIDEO, LYRICS, HAND SIGNALS, AND BRANDED CLOTHING THE GOVERNMENT SEEKS TO INTRODUCE ARE NOT HEARSAY.

Defendants argue that the lyrics should be excluded as inadmissible hearsay. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). That "statement" can be a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion. Fed. R. Evid. 801(a). The Federal Rules of Evidence not only allow for exceptions to the rule against hearsay, but also define specific types of statements that are not hearsay.

Like any prior statement by a defendant, rap lyrics are admissible as substantive evidence under Rule 801(d)(2)(A) when offered against that defendant. The rap lyrics sung by Parker are clearly admissible against him.[10] The lyrics sung by Hassan Elliott and M.S. are equally

---

[10] The defendants contend, without citation to authority, that their own statements are not straightforward party admissions, because they are filtered through the creative expression of the producer and are therefore hearsay. (ECF No. 216, p. 7-8). This is nonsense.

As discussed above, at least one cooperating witness was present when "Frankford Purge" was recorded in a recording studio, well in advance of the music video shoot; there was no producer involved in the creation of the actual song. Numerous witnesses will testify that Parker later arranged for and directed the video shoot, including the locations and use of firearms and torches. To the extent that any production took place, it was conducted by Parker. The cameraman merely captured video footage at the direction of Parker, which is corroborated by Parker's own statements on the prison intercept. Specifically, Parker uses industry terms like "B-roll" and explains the filming process to Elliott.

Additionally, Parker distributed the audio file for "Frankford Purge" to SG1700 members well in advance of the filming of the video. A cooperating witness will testify that he/she had the song memorized by the time they filmed the video.

admissible as co-conspirator statements in furtherance of a conspiracy, consistent with Rule 801(d)(2)(E) against both Parker and Jimenez.

But the defendants also argue that any gang signs or branded clothing displayed in the identified videos are hearsay and are therefore admissible only as to the individual who made the sign or wore the clothing. To the extent gang signs and branded clothing come within the purview of the rule against hearsay – and the government makes no such concession – these gang signs and branded clothing are clearly admissible against the defendant making or wearing them, as the defendants concede. They are also conspirator statements in furtherance of a conspiracy and are thus admissible against both defendants. All identified rap lyrics, portions of the "Frankford Purge," and screenshots from additional videos identified in this motion and Exhibit A—including pictures of defendant Jimenez using gang signs and wearing branded clothing— should be admitted against both defendants.

    A.   <u>The lyrics sung by Hassan Elliott and M.S. are admissible as statements of a co-conspirator in furtherance of a conspiracy under Rule 801(d)(2)(E).</u>

Rule 801(d)(2)(E) provides that an out-of-court statement made by a "party's coconspirator during and in furtherance of the conspiracy" is not hearsay if it is "offered against [that] opposing party." A co-conspirator's out-of-court statement is therefore admissible so long as the proponent of the statement can prove by a preponderance of the evidence that "(1) a conspiracy existed; (2) the declarant and the party against whom the statement is offered were

---

To this day, "Frankford Purge" is still linked on Parker's publicly available Instagram profile, "Da.Warlord," along with the following, "Love.loyalty.respect.honor.trust.integrity.principal.morals.Big Sturdy, Fuck blood loyalty makes you family Nbs 5300 L.Block that's family," and a post of "Frankford Purge" titled, "New shit about to drop [fire emoji] I'm just warming up watch me work."

members of the conspiracy; (3) the statement was made in the course of the conspiracy; and (4) the statement was made in furtherance of the conspiracy." *United States v. Turner*, 718 F.3d 226, 231 (3d Cir. 2013).    The government can "rely on the co-conspirator's statements themselves" so long as "they are corroborated by independent evidence." *Id.* A co-conspirator's statements are admissible "even if the basis for admission is a conspiracy different from the one charged," *id.* (citation omitted), or if the statements were not made to another member of the conspiracy, *United States v. Duka*, 671 F.3d 329, 348 (3d Cir. 2011); *United States v. Gupta*, 747 F.3d 111, 123 (2d Cir. 2014). A district court can "conditionally admit evidence under Rule 801(d)(2)(E)" so long as the government has met the Rule's requirements "by the close of its case." *United States v. Onyenso*, 615 F. App'x 734, 737 (3d Cir. 2015) (non-precedential) (emphasis omitted).

Here, the government will establish the existence of the conspiracy through multiple witnesses (including former members of SG1700 and opposing gangs), photographs of the defendants and SG1700 members wearing SG1700-branded clothing and flashing gang signs, and social media posts and monikers using "SG1700," "Scattergood 1700," "5300," "Lesher," and "L-Block." These witnesses and additional evidence will establish that Parker, Jimenez, Elliott, and M.S. were part of the conspiracy, that the statements (outlined above) were made during the conspiracy, and in furtherance of the conspiracy, consistent with specific statements addressed in the "Relevance" section above.

The government will show that the statements outlined in this motion were made in furtherance of the conspiracy. Multiple witness (former SG1700 members and opposing gang members) will testify that SG1700 and the opposing gangs used rap videos to "gang war." The group regularly created raps and rap videos to communicate threats to opposing gang member

and take credit for crimes they committed (here, the Rogers murder and the Walker murder). The Rogers' murder, for example, stems from a social media fight where a member of 4800 Tackawanna made fun of one of Bilal Mitchell's raps on Instagram. This "gang war" and SG1700's show of force and dominance directly relates to its ability to maintain control of its drug territory. The sections sung by Hassan Elliott and M.S. send a clear message to opposing gangs. Elliott says, "check the score," referring to the body count between he groups and how SG1700 is "winning." M.S. raps, "Fifty-three down to seventeen til the youngest nigga got a body nigga/everybody's catchin' bodies, nigga/**fuck around be next**." These lyrics essentially say we have killed members of your group before, and we will do it again. If you step to us, we will step to you.

The government requests a pretrial ruling that it may introduce statements made by Hassan Elliott and M.S.—an unindicted co-conspirator—during and in furtherance of the racketeering and drug conspiracies charged in the Superseding Indictment. The statements the government intends to introduce are outlined in the chart above. Additionally, for the same reasons, the government requests a pretrial ruling that Parker's statements, outlined above, are admissible against Jimenez.

B. The hand signs and branded clothing are admissible as admissions of a party opponent and conspirator statements in furtherance of a conspiracy.

The defendants argue that hand signs and branded clothing are admissible only as to the defendant who made the signs or wore the clothing. In doing so, the defendants acknowledge that, at best, the signs and clothing are admissions of a party opponent and are therefore not hearsay, at least as to that defendant. It is a short path then to the admission of those same signs and clothing made or worn by others as conspirator statements in furtherance of a conspiracy. As

set forth above, the entire purpose of the "Frankford Purge" song and video, and additional videos put out by the group and included in Exhibit A, was to send a message, and that message was strengthened by a showing of unity among the multiple members of the gang. They did so demonstrating their allegiance to the gang through hand signs and clothing, thus furthering the conspiracy.[11]

Exhibit A includes numerous video screenshots the government intends to introduce in this case. These still photographs show association evidence between members of SG1700, other witnesses in the case (civilians, gang members, and former gang members), and gang territory; Jimenez flashing gang signs (double "Ls" and the "L" and a "7," which numerous witnesses will explain represented SG1700); Parker and other SG1700 members inside of SG1700's "trap house" at 1688 Bridge Street ("Dear Momma" and "No Cap"); evidence of the feud between SG1700 and 4800 Tackawanna (the burning of the "Homi" memorial teddy bear in "No Cap," which a witness will testify was stored at Jimenez's home prior to use in the music video); corroboration of cooperator statements; SG1700 branded clothing; and access to guns, drugs, and drug paraphernalia.

The below photograph shows Jimenez flashing the "L" and the "7," one of the SG1700 gang signs, in the "Frankford Purge."

---

[11] The government does not concede that gang signs or branded clothing would be hearsay, even if they did not fall within the exemptions found in Rule 801(d), nor have the defendants' explained why they should be considered such. But even if they could be considered hearsay, they would fall within one of the exceptions to the rule against hearsay found in Rule 803.



In the attached exhibit, Jimenez is featured in numerous videos showing these and other SG1700 gang signs (double "Ls," depicted below).

Jimenez also wears gang-related clothing in many of the videos. Cooperating witnesses and former SG1700 members will identify this clothing, the origin, and relationship to the gang. The clothing includes the "Top Chef Boyz" logo, one of the gangs other names, featured below:





In the below video, "Ride for Me," Hassan Elliott wears the SG1700 logo, which will be identified by multiple witnesses:



Finally, the government intends to introduce a video (without sound) that Hassan Elliott posted to Instagram the day before the murder of Sergeant James O'Connor. Elliott and Parker created the video in response to a 4800 Tackawanna rap video, "Ready or Not." The video features Parker and Elliott, wearing masks, dancing around the kitchen of 1688 Bridge Street with multiple guns that were recovered from the middle bedroom by the Philadelphia Crime Scene Unit on March 13, 2020, including the murder weapon, a .22 caliber Mossberg rifle. Multiple cooperating witnesses will identify Parker (left) and Elliott (right) in the video and provide context for the response to 4800 Tackawanna. Screenshots of the video appear below:



IV.     **ADDITIONAL EVIDENCE**

The government has attempted to set forth with particularity the evidence that it seeks to introduce as admissible and related to rap videos or lyrics. The government respectfully requests that it be permitted to supplement this particular request with additional requests if the government comes to believe during the course of its trial preparation that such additional evidence would be useful to the jury in its determination of a fact material to a disputed element, or should the government newly learn of such additional evidence.

V.      **CONCLUSION**

For all the foregoing reasons, the government respectfully requests that this Court admit the portions of "Frankford Purge" outlined above and still photographs from the remaining music

33

videos in this motion and Exhibit A. The government submits that this evidence is intrinsic to

racketeering and drug conspiracies, as well as the substantive murder charges. It is also

permissible under Fed. R. Evid. 404(b), and its probative value is not substantially outweighed

by the danger of unfair prejudice, nor does any of the proffered evidence run afoul of the rule

against hearsay.

           Respectfully Submitted,

           JACQUELINE C. ROMERO
           United States Attorney

           */s/Ashley N. Martin*
           ASHLEY N. MARTIN
           LAUREN E. STRAM
           CHRISTOPHER DIVINY
           Assistant United States Attorneys

Date: February 7, 2025

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the Government's Response to

Defendants' Motion *in Limine* to Exclude Evidence has been served by me, by email, upon

defense counsel:

Thomas O. Fitzpatrick, Esquire
Mincey, Fitzpatrick, Ross, LLC
1650 Market Street, Suite 3600
Philadelphia, PA 19103
tom@minceyfitzross.com
*Attorney for Kelvin Jiminez*

Michael Parkinson
Parkinson, Tarpey & Lloyd
1315 Walnut Street, Suite 1650
Philadelphia, PA 19107
mp@ptlfirm.com
*Attorney for Dominique Parker*


*/s/Ashley N. Martin*
ASHLEY N. MARTIN
Assistant United States Attorney


Date: February 7, 2025

# EXHIBIT A

# "Frankford Purge"
## Da War Lord – 7even – L Block Leek

https://www.youtube.com/watch?v=qFgZj01XsvU
Posted to YouTube February 2, 2020

1



2

2/5/2025

# "No Cap"
# Hood Star

https://www.youtube.com/watch?v=vsn-ICuNv5Y
Posted to YouTube January 3, 2020

3



4

2



5



6

2/5/2025



7



8

4



9



10

2/5/2025



11



12

2/5/2025



13



14



15



16

# "Kooda"
# Numba7daDemon

https://www.youtube.com/watch?v=1KNZStwKUX4
Posted to YouTube on August 19, 2018

17



18

2/5/2025



19



20

2/5/2025



21



22



23



24

2/5/2025



25



26

2/5/2025



27



28

2/5/2025



29

# "Dear Momma/Tru Story" Da.Warlord

https://www.youtube.com/watch?v=aBipjnSo6Cw
Posted to YouTube on March 20, 2020

30

15



31



32



33



34



35



36



37

# "Catch Up"
# duwap x numba 7 da Demon

https://www.youtube.com/watch?v=wdtDQRlhic4
Posted to YouTube on October 6, 2018

38

2/5/2025



39



40

2/5/2025



41

"Ride For Me"
PBG Boss

https://www.youtube.com/watch?v=R7_p8GMIwRY
Posted to YouTube November 24, 2018

42

21



43



44

# "Regardless"
# Ft. Hollywood Haz

https://www.youtube.com/watch?v=TlNuMsNqlnY
Posted to YouTube on August 20, 2015

45



46

2/5/2025



47



48



49



50



51

# "Yes Indeed Freestyle"
# PBG Boss

https://www.youtube.com/watch?v=U1eeRWEorpk
Posted to YouTube on September 16, 2018

52



53



54



55

28